SARAH A. POWELL, by her next friend, W. F. POWELL, plaintiff in error, *vs.* JAMES EDMONDSON.

Where an award, made by arbitrators under the Arbitration Act of 5th March, 1856, exceeds the authority given by the submission, so much of such award as relates to subject matters not submitted will be rejected as surplusage, while the balance of the award will be allowed to stand as the judgment of the Court, final and conclusive, between the parties, as to the matter covered by the submission.

Award in Murray Superior Court, decision by Judge WALKER, October Term, 1861.

The Reporter refers to the opinion of the Court for a statement of the facts and questions in this case.

J. W. POWELL and J. S. P. POWELL, for plaintiff in error.

OATS, for defendant in error.

*By the Court*—LYON, J., delivering the opinion.

This case comes before us upon objections, filed in Murray Superior Court, to an award made by arbitrators, upon a submission to them by Mrs. Sarah A. Powell, a married woman, having a separate estate in trust, and her trustee, James Edmondson, under the Arbitration Act of 5th March, 1856, pamphlet, 222.

It appears that the trust estate had become very greatly embarrassed with debt, and litigation consequent to such indebtedness. Suits were progressing against the trustee and the trust by its creditors, and many unsatisfied judgments and executions were outstanding against it.

The trustee, Edmondson, and Mrs. Powell, the *cestui que trust*, were at issue as to his accounts with and against the trust, and his management thereof, and many bills in equity had been commenced by the *cestui que trust* against the trustee for divers purposes, and one bill had been filed by the trustee against the *cestui que trust*. In this condition of things, the parties, to put an end to the litigation, agreed to submit all matters of difference between them to arbitration, under the Act referred to, whose award should be final and conclusive. The submission was made up and signed by these two parties only. The agreement for submission recites, substantially, that Sarah A. Powell, being interested in certain specified cases—a schedule of which being thereto appended, and which is a list of the various bills filed and then pending between these two parties, and of the judgments, executions and suits pending in the Superior, Inferior and Justices Courts of Murray county, at the instance of the several creditors, plaintiffs therein, some of whom are parties to the submission—and that the said Sarah A. Powell, being desirous to have settled and ascertained her interest and liabilities in relation to them, as well as being desirous to have a full settlement and accounting with the said James Edmondson, her trustee, of all matters and things touching her trust estate, and said Edmondson being also desirous to have such settlement made, it was agreed that all matters and

things connected with said cases be referred to the arbitrament and award of James Milner and Leander W. Crook, with power in them to select an umpire—that said arbitrators were to hear and determine and ascertain the respective rights of the parties, as well as their respective liabilities, and make such award touching the premises as, in their judgment, might be deemed just and equitable—that the submission was made under the Arbitration Statute, passed March 5, 1856, and in all things was to be governed by the provisions of that statute—that the trustee should be removed, and a new one appointed by the arbitrators—that *"it being the desire and intention of the parties to have a full and final settlement of all matters between the parties signing this submission, of course it is not intended by this to affect any of the rights of any of the creditors of said trust estate who are no parties to this submission by signing it."* The two arbitrators named in the submission selected John W. H. Underwood as the umpire, were qualified, proceeded to the discharge of their duties, and awarded, that on taking an account between the parties there was due from James Edmondson to Sarah A. Powell's trust estate, on the 15th August, 1861, $12,973 12, and that there was due to James Edmondson from Sarah A. Powell's trust estate, on the 15th August, 1861, $11,355 14, leaving due from said Edmondson, at that time, the sum of $1,617 98—the means by which that result was obtained appearing by an account appended as a part of the award; that the trade known as the purchase of the Ramsey and Black lands be rescinded, and that the titles to said land vest in James Edmondson, never, in fact, having vested in the trust estate, and that the trade in relation to the purchase and sale of the negro, Jane, and the substitution in her place of Lavina, be rescinded and said negroes be restored to the trust estate.

They further awarded that Edmondson deliver to James A. R. Hanks and John M. Jackson, as Receivers, at Dalton, by the 24th day of August, 1861, the several negroes belonging to said trust estate, then in his possession, to-wit: Albert, Georgiana, Louvenia, Nero, Sam, Cain, Harry, Jane and

Henry, and that on his failing to deliver up said negroes, that he pay for each which he fails to deliver the sum of $1,350 for each negro not delivered, unless providentially hindered.

It was further awarded, that the amount of $1,000, awarded in favor of said Edmondson for a wagon and five mules, be a credit on the note of R. H. Powell & Company, for $1,499 51, dated 18th September, 1860, and due one day after date, and that the sum of $3,400, allowed for goods sold to James Morris, be credited on the note of R. H. Powell & Company, for $13,810, which is now in the name of Thomas H. Callaway; that the two bills in the Chancery Courts, at Jasper, Tennessee, be dismissed, the bond and note given by said Edmondson for the forthcoming of said negroes and for the hire, be discharged; that said Edmondson pay all the Court costs of the said bills in the Chancery Courts in Tennessee, and the amount be allowed him as a credit on the amount thereby found due from him, and that he also pay the amount due on the executions in Tennessee, levied on said negroes, or some of them, in favor of A. H. Hickman, and that the amount so paid be allowed him as a credit on the balance hereby awarded against him. The two cases ordered to be dismissed were bills filed by Mrs. Sarah A. Powell, by next friends, against Edmundson and others; that James A. R. Hanks and John M. Jackson, Esquires, be and they are hereby appointed Receivers in equity, to receive from said Edmondson the negroes hereby directed to be delivered up by him, and hire them out until the first of January, then next, and hold the proceeds of such hiring, and on the first Tuesday in January, 1862, (unless the Legislature shall extend the stay-law or otherwise prevent the sheriff sales) sell said negroes at public out-cry to the highest bidder for cash, or a sufficient number thereof, together with the hire they may receive and the balance which may be due from said Edmondson, to pay certain judgments, executions and debts, therein particularly specified in favor of the various plaintiffs therein—and amongst them are two claims, not judgments, of one thousand dollars each, in favor of James

Milner and James A. R. Hanks, for professional services rendered the trust estate, and the sum of two hundred and fifty dollars to each of the arbitrators from each of the parties.

The Receivers were to hire out the negroes from time to time, until they could be legally sold, or the specified debts otherwise paid ; that James Edmondson be removed from the trust, and the whole of the trust property belonging to the trust be placed under the control and management of said James A. R. Hanks and John M. Jackson, as Receivers, who are authorized to act as trustees until said debt shall have been paid off, and in case said negroes and their hire and balance due from said Edmondson shall be insufficient to pay said debts, then said Receivers are to sell enough of the balance of said negroes as will be sufficient to pay off said debts, or they may hire a portion or all of said negroes out, as may in their judgment be the best for the interest of all concerned. That the bill of Edmondson vs. Mrs. Powell be dismissed at his costs; that the recovery in favor of Mrs. Sarah A. Powell vs. Edmondson be entered on the bill of Sarah A. Powell, by her next friend, vs. James Edmondson, J. S. P. Powell, R. H. Powell, *et al.*, filed in office, 16th March, 1861, and that Edmondson pay the costs of this bill; that the two bills subsequently filed by Mrs. Powell against Edmondson, be dismissed at the cost of the trust estate.

That Sarah A. Powell was not in law or equity a partner in the firm of R. H. Powell & Company, (she being a married woman had no authority to bind herself as such, nor could her trustee make her such) and that she has no interest in the iron or other products of the furnace, place, or iron works, and all her interest and claims being hereby considered and paid for.

That the Receivers hereby appointed are authorized to constitute an attorney or attorneys under them or either of them in the performance of the duties imposed, and such attorney shall be subject to the order of the Court of Equity, as also the Receivers hereby appointed, and said Receivers and attorney shall be paid a reasonable compensation for their ser-

Powell *vs.* Edmondson.

vices, to be judged of and allowed by the Court of Equity of Murray county.

That this is a final and conclusive settlement between the parties of all matters and things between them up to this date.

That Edmondson is authorized to retain out of the amount found due from him, enough to pay off and discharge the nine judgments in favor of Wm. Luffman & Company vs. James Edmondson, trustee, and on his satisfying said judgment, he will be entitled to have the amount deducted from the $1,617 98 hereinbefore found due from him.

At the October Term, 1861, of Murray Superior Court, said award, by an order of the Court, was put on its minutes and made its judgment, against the objection of Mrs. Sarah A. Powell, no fraud in the arbitrators being suggested, and no especial objection being made to the award because of the allowance of attorney's fees. To the decision of the Court, making the award the judgment of the Court, Mrs. Sarah A. Powell excepted and filed her bill of exception, and that is the only question this Court is called upon to determine, whether the award as returned or reported should have been allowed by the Court below.

At the same term of the Court, another order was passed which it is well enough to notice here. It was made to appear to the Court that Edmondson had failed to deliver five of the trust negroes as directed by the award, to-wit: Albert, Georgiana, Nero, Sam and Henry, in fact he came into Court, admitted that he had not delivered the negroes, and did not intend to do so, but was willing to pay for them the sum fixed for such non-delivery by the award, to-wit: The sum of $1,350 for each, making in the aggregate the sum of $6,750. Whereupon, it was ordered by the Court, *with the consent of the parties* (meaning with the consent of Edmondson and the Receivers, we suppose), that Edmondson pay over said sum to the Receivers, immediately, with interest on said sum from the 24th day of August, 1861.

It is objected, at the threshold of the argument in this case, that, inasmuch as there was no suggestion of fraud on the

part of the arbitrators, in the Court below, that, under the Act of 5th March, 1856, under which this proceeding was taken, no other objection can be taken or heard to the award; but that it is, in the absence of fraud, final and conclusive between the parties. This objection is not well taken. The fourteenth section of that Act provides: "After said arbitrators have made up their award, they shall furnish a copy of the same to each of the parties, and shall return the original award to the next Superior Court of the county where the award is made; and said award shall be entered on the minutes of said Court, and shall have all the force and effect of a judgment or decree of said Superior Court, and may be enforced in the same way at any time after the adjournment of said Court, and shall be final and conclusive *between the parties as to all matters submitted to the arbitrators,* unless objections shall be plead to the same, as provided in the next section of this Act," etc. The only objection specified by the next section is that of fraud in the arbitrators, or either, etc. Under that Act, if the arbitrators exceed the authority given to them, by awarding upon matters not submitted or touching the interests of parties who are no parties to the submission, their action in these respects is a mere nullity, for the Act expressly provides that the award shall be "final and conclusive between the parties," not third persons, and "as to all matters submitted to the arbitrators," not as to other matters and other things not submitted. As to those matters submitted to the arbitrators, the award is good, and final, and conclusive between the parties, and must be so enforced; but if the arbitrators, in their award, have gone farther than they were authorized by the submission, and have settled or attempted to settle matters not in the submission or legitimately within its proper scope, such part or parts must be declared to be void and of no effect, whilst the balance will stand. That is the sense of the Act of 1856, and was always a fundamental rule of awards. Billing on Awards, 147; Whitehead vs. Frith, 12 East, 165; Atcherson vs. Cargly, 11 Price, 57.

The great and leading object of the submission, repeatedly expressed, was to have a full and final settlement of all mat-

Powell *vs.* Edmondson.

ters between the parties signing, intending and carefully expressing it, that the rights of others not signing were not to be affected; but, as between themselves, the award was to be final and conclusive. It is true that Mrs. Powell declares her anxiety to have "settled and ascertained her interest and liabilities in relation to various suits then pending between herself and Edmondson, as well as of and in certain judgments, and executions, and suits, progressing against her estate; and that all the matters and things connected with those cases are referred to the arbitrators, that they " may hear, ascertain and determine the respective rights of the parties," not other persons, "as well as their respective liabilities," not to third persons, for they were fixed by the judgments, but to each other, and to and respecting the trust estate; "and to make such award, touching the premises, as in their judgment may be deemed just and equitable," and to remove Edmondson, and to appoint a new trustee.

The arbitrators, in execution of their power, made up an account between Edmondson and his trust, ascertained and declared what the balance was, adjudicated and fully settled all matters between them, and made their award accordingly. Had the arbitrators stopped at this, and the removal and appointment of a trustee, they had done all they were authorized to do, and having done so much under and within the submission, that much of the award must stand and remain as a conclusion of all matters between these parties up to that time. But the award did not stop here, it went on to direct that Edmondson, the trustee, should deliver the negroes in his possession to Messrs. Hanks & Jackson, as Receivers, and that if he did not do so by the 24th August, 1861, he should pay to the Receivers the sum of $1,350 00 for each negro not delivered. It appointed Messrs. Hanks & Jackson as Receivers in Equity, to receive the negroes in possession of Edmondson, and the *whole of the trust* belonging to said estate to be controlled and managed by them as Receivers, and they were to act as trustees until the debts were paid. They were to hire out the negroes, and with the hire and the balance due from Edmondson, to pay off the judgment and

executions therein specified due to third persons, and the sum of $2,000 00, attorney's fees, that was not even specified or referred to in the submission, and if the sums received from the hire and Edmondson's balance were insufficient, then these Receivers were to sell out the trust itself to pay off these debts due to third persons. Messrs. Hanks & Jackson were not appointed by the award as trustees to execute the trust that existed in favor of Mrs. Powell, but to perform duties created by the arbitrators. None of these things, I mean the appointment of Receivers, the turning over the property belonging to the trust to them, to sell, hire out, etc., to pay the debts of third persons, with power to appoint attorneys under them, and to charge the estate with the payment for their services, etc., etc., were within the terms or intent of the submission. How is it possible that they could have believed, under this submission, that they had the power to state a sum at which Edmondson could take the negroes belonging to the trust, if he chose, we cannot see; yet they did so, and Edmondson availed himself, or attempted to do so, of the opportunity, by taking five out of the six he was ordered to deliver, at the price stated. For the reason that these parts of the award are not within the submission, we hold that they are mere nullities, not binding upon the parties, and must be rejected from the award as so much surplusage. The balance of the award, that which relates to the matters and things between Edmondson and Mrs. Powell, and the trust represented by him for her, being within the submission, and not dependent on those parts of the award, rejected as surplusage, must stand as the judgment of the Court, final and conclusive, between the parties of all matters between them up to the time stated in the award. We do not say that the arbitrators, in exceeding their authority, acted in bad faith or unwisely. On the contrary, we think that it was of the utmost importance to this trust, which appears to us as being constantly frittered away by bad management and expensive litigation, that it should by some stroke, like that attempted by the award, or some other, be cleared of litigation and embarrassment. We were so strongly con-

vinced of this that it was with the greatest reluctance that
some of our Court consented to interfere with the award in
the slightest particular.

The arbitrators removed Edmondson from the trust, but
failed to appoint one to take his place; hence the trust is
vacant, and we have directed the Court below to appoint one,
upon giving notice thereof to Mrs. Powell, and we sincerely
trust that some competent and responsible person will be se-
lected,who, in defiance of all interference, will get this unfor-
tunate trust estate out of litigation, and keep it so.

Let the judgment be affirmed, with instructions as set forth
in the copy of the remitter following:

(COPY OF REMITTER.)

SARAH A. POWELL, by her next friend, W. F. POWELL, *vs.*
JAMES EDMONDSON.

*Award, from Murray, Cherokee Circuit.*

This case came before the Court upon a transcript from
the record of the Superior Court of Murray county, and after
argument had, it is ordered and adjudged that the judgment
of the Court below, making the award the judgment of that
Court, stand affirmed in all respects, except the part of said
award which directs James Edmondson to turn over the
negroes of the trust estate in his possession to James A. R.
Hanks and John M. Jackson as Receivers, and in case that
he fails to do so, that he pay the sum of $1,350 00 for each
negro so not delivered, and except also that part of said
award which appoints James A. R. Hanks and John M.
Jackson as Receivers in Equity, to receive from James Ed-
mondson the negroes belonging to the trust in his possession,
and that they hire out and sell said negroes, or a sufficient
number of them, and with the proceeds of the hire, sale and
amount that may be due by Edmondson to pay the debts
scheduled in said award against the trust estate—it being the
opinion of this Court that the appointment of Receivers,
their possession of the property of the trust, a direction for
its sale, and the payment of the debts against the trust estate,

or any part of them, (except those due by the trust to James Edmondson,) formed no legitimate part of the subject matter entrusted by the parties to the arbitrament of the arbitrators, and that the award touching these matters are therefore not binding on the parties, and should be annulled. It is further ordered and adjudged that the Court below be and is hereby instructed, upon notice to Mrs. Sarah A. Powell, to appoint a fitting and proper person as trustee, to take charge of said trust now made vacant by the removal of James Edmondson by the award.

That part of the award requiring James Edmondson to pay the costs on the dismissed cases in Tennessee Courts, and the amount due on the executions in favor of A. H. Hickman, levied in the State of Tennessee on some of the negroes of the trust, form no part of the exceptions, but are to be paid by Edmondson, and he is to receive a credit for such amounts, when paid, on the balance found due by him as directed in said award.